Approved: *Mollie Bracewell*                    ORIGINAL
         ───────────────────────
         MOLLIE BRACEWELL
         Assistant United States Attorney

Before:  THE HONORABLE BARBARA C. MOSES
         United States Magistrate Judge
         Southern District of New York

**19 MAG 3740**

- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :    **SEALED**
                                 :    **COMPLAINT**
        - v. -                   :
                                 :    Violation of
REMYCK LIZ,                      :    21 U.S.C. § 846
                                 :
              Defendant.         :    COUNTY OF OFFENSE:
                                 :    NEW YORK
- - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        DAVID CHENG, being duly sworn, deposes and says that
he is a Special Agent with the Department of Homeland Security,
Homeland Security Investigation ("DHS-HSI"), and charges as
follows:

                          **COUNT ONE**
                    (Narcotics Conspiracy)

        1.    From at least in or about May 2018 through at least in
or about April 2019, in the Southern District of New York and
elsewhere, REMYCK LIZ, the defendant, and others known and
unknown, willfully and knowingly did combine, conspire,
confederate, and agree together and with each other to violate
the narcotics laws of the United States.

        2.    It was a part and object of the conspiracy that REMYCK
LIZ, the defendant, and others known and unknown, would and did
distribute and possess with intent to distribute a controlled
substance, in violation of Title 21, United States Code, Section
841(a)(1).

        3.    The controlled substance that REMYCK LIZ, the
defendant, conspired to distribute and possess with intent to
distribute was 100 grams and more of mixtures and substances
containing a detectable amount of heroin, in violation of
Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.     I am a Special Agent with DHS-HSI.  I have been personally involved in the investigation of this matter.  This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses and others, as well as my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.  Based on my participation in this investigation, my conversations with law enforcement officers including a particular undercover officer ("UC-1") from the New York City Police Department ("NYPD"), and my review of NYPD reports, I have learned, among other things, the following:

a.     On or about May 30, 2018, a co-conspirator not named as a defendant herein ("CC-1") provided UC-1 with the telephone number of an individual CC-1 referred to as  "Rem" (the "Rem Telephone Number"), and told CC-1, in substance and in part, that "Rem" was a drug dealer.

b.     Based on my review of an exchange between CC-1 and UC-1 on or about May 30, 2018, I have learned, in substance and in part, the following:

i.     CC-1 informed UC-1, in part: "I also got a dde named rem."

ii.     UC-1 responded, in part: "Rem his stuff good?"  Based on my training and experience, and discussions with UC-1 and other law enforcement officers involved in the investigation, I understand that UC-1 was inquiring as to the quality of the narcotics that "Rem" would be supplying.

iii.     CC-1 responded, in part: "Yes.  He is [another co-conspirator's] supplier."

iv.     UC-1 asked if CC-1 required a "tip,"
*i.e.*, a cash payment to CC-1 for the referral.  CC-1 responded,
in part, "Yes."

v.   . After UC-1 provided a tip, CC-1
provided the Rem Telephone Number to UC-1 and then stated, in
part: "And ur all set n vouched for."  Based on my training and
experience, and involvement in this investigation, I understand
that CC-1, in exchange for the tip, had "vouched" for UC-1 with
"Rem," *i.e.*, provided assurances to "Rem" that UC-1 was a
legitimate buyer.

c.     Based on my review of text messages exchanged
between UC-1 and the Rem Telephone Number, I have learned, in
substance in part the following:

i.     On or about May 30, 2018, approximately
four minutes after the above exchange, UC-1 received a message
from the Rem Telephone Number, which stated, in part: "Hey waz
up . . . is [CC-1's] friend remy" - which, based upon the
context of the exchange and the facts set forth above, I believe
to be the same individual identified by CC-1 as "Rem."

ii.     UC-1 then responded, in part: "He [CC-
1] told me to holla at u when I need something.  Getting my $$
right now."

iii.     UC-1 and "Rem" again communicated on or
about June 4, 2018 through on or about June 5, 2018, and agreed
to meet on or about June 5, 2018, at a location in Brooklyn, New
York (the "Location") so that "Rem" could sell UC-1 narcotics.
UC-1 requested to buy "5 buns," referring to five bundles of
heroin,[1] which "Rem" agreed to sell for $360.

d.     On or about June 5, 2018, UC-1 met with an
individual subsequently identified as REMYCK LIZ, the defendant,[2]
at the Location.  During the meeting, which was recorded, UC-1
purchased from "Rem" approximately 50 glassines - approximately
1.904 grams - of a substance that, in later laboratory testing,
tested positive for the presence of heroin, in exchange for
$360.

---

[1] A bundle is a term used in narcotics trafficking to refer to a
set of ten glassines.  A glassine is a small wax paper envelope
typically containing approximately .1 grams of heroin.
[2] Shortly after the meeting, UC-1 was shown a photograph of
REMYCK LIZ, the defendant.  UC-1 identified LIZ as "Rem"—*i.e.*,
the individual who sold UC-1 narcotics on June 5, 2018.

e.  On at least 11 other occasions between on or about June 12, 2018 and in or about April 2019, UC-1 made additional purchases of heroin from LIZ (the "Controlled Buys"). On or about March 28, 2019, UC-1 purchased from LIZ approximately 30 grams of a substance that later tested positive for the presence of heroin in exchange for $2,040 at the intersection of Madison Avenue and East 36th Street in New York, New York.

f.  Each of the Controlled Buys was conducted in a similar manner: UC-1 called LIZ, and, during the call, UC-1 and LIZ agreed on the quantity and price of the heroin to be sold and arranged a time and place to meet for the sale; UC-1 and LIZ then met at the pre-arranged location and conducted the heroin transaction.  In total, LIZ sold to UC-1 approximately 155 grams of substances that later tested positive for the presence of heroin.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of REMYCK LIZ, and that he be imprisoned or bailed, as the case may be.

DAVID CHENG,
Special Agent, DHS-HSI

Sworn to before me this
16th day of April, 2019

THE HONORABLE BARBARA C. MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

4